THE DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TIMOTHY JAMES M. DUENAS,<br><br>Defendant. | CRIMINAL CASE NO. 17-00004<br><br>**DECISION AND ORDER RE MOTION TO SUPPRESS ITEMS SEIZED FROM DUENAS' PERSON, VEHICLE, AND POST-ARREST STATEMENTS** |

Before the court is Defendant Timothy James M. Duenas' Motion to Suppress. Mot. Suppress, ECF No. 26. A two-day suppression hearing on the matter commenced on May 11, 2017. ECF 85-86. After reviewing the parties' submissions, and relevant caselaw and authority, and having heard argument from counsel on the matter, the court hereby **GRANTS** the Motion, for the reasons stated herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

**A. Procedural Background.**

On January 26, 2017, an Indictment was returned as to Katlyn Breanne Scully ("Scully"), David Michael Sare ("Sare"), and Timothy James M. Duenas ("Duenas"). Indictment, ECF No. 1. The Indictment sets forth four counts: (1) Conspiracy to Distribute Methamphetamine Hydrocholride, in violation of 21 U.S.C. §§ 846, 841(a)(1) & (b)(1)(A)(viii) (Count 1); (2)

1

Possession with Intent to Distribute Methamphetamine Hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(viii) and 18 U.S.C. § 2 (Count 2); (3) Attempted Possession of Methamphetamine Hydrochloride with Intent to Distribute in violation of 21 U.S.C. §§ 846, 841(a)(1) & (b)(1)(A)(viii) (Count 3); and (4) Inmate in Possession of Contraband in Prison, in violation of 18 U.S.C. §§ 1791(a)(2), (b), (c), & (d)(1)(C) (Count 4). *Id.* Duenas was charged with Counts 1 and 3. *Id.* at 1-3.

On March 9, 2017, Duenas filed a Motion to Suppress, asking that the court suppress the following evidence: (1) a glass pipe seized from Duenas' person; (2) a Western Union Receipt; (3) a scale; and (4) Duenas' post-arrest statements. Mot. Suppress at 3-5, ECF No. 26. The court now issues its decision on Duenas' Motion to Suppress.

**B. Findings of Fact.**

On August 15, 2016, Scully and Sare arrived at the Antonio B. Won Pat International Airport ("Airport") from Hawaii. Guam Customs and Quarantine Officer Franklin J. Gutierrez conducted the primary screening of Scully and Sare. Scully was directed to a secondary search due to suspicious movements and "glassy" eyes. During the secondary search, Guam Customs and Quarantine Officer Yvonne Cruz ("Officer Cruz") located a substance resembling narcotics within Scully's suitcase and purse. Specifically, Officer Cruz located eight condoms with approximately 400 gross grams of a substance that field-tested positive for methamphetamine.

Scully represented to the officers that she was traveling with Sare on their honeymoon. When questioned, she informed Guam Customs and Quarantine Officer Eugene Igros ("Officer Igros") that she was to deliver the methamphetamine to an individual named "T.J." Scully told Officer Igros that she had previously delivered approximately 200 grams of methamphetamine to Duenas. Officer Igros prompted Scully for "T.J.'s" real name. After using Scully's phone to locate "T.J.'s" Facebook profile, Officer Igros identified "T.J." as "Timothy Duenas." Scully

2

represented to Officer Igros that "T.J." was going to pick her up from the Airport, and Officer Igros noted that her cell phone received text messages from "T.J." Additionally, Scully indicated that she and Sare purchased the methamphetamine in California for $2,000.00.

Scully worked with the agents to conduct a controlled delivery to "T.J." so that agents could perform a "takedown." Officer Igros told Scully to text "T.J.", stating that she had lost her bag. "T.J." replied "[w]hat k [*sic*] take a taxi to hotel . . . Let me know when your [*sic*] there." Gov.'s Ex. 1. Surveillance teams positioned themselves at the Hotel Santa Fe at approximately 9:45 p.m. on August 15, 2016, to identify "T.J." and any other associates.

At approximately 10:04 p.m., "T.J." texted Scully and expressed concern. *See id.* "T.J." then followed up with a vague text that he "got the guy ready the one [he] told [her] about," and that "he [had] 7." *Id.*

Officer Igros instructed Scully to send a text that her reservation was for September 2nd rather than that day, and that the hotel was booked. *See id.* "T.J." replied that he could pick her up so that she could get "a better room [at the] same price." *Id.* Additionally, "T.J." texted that he was driving a blue Nissan Maxima and that he would meet Scully at the Santa Fe Hotel lobby fifteen to twenty minutes later. *Id.*

Surveillance teams organized at the Hotel Santa Fe. At approximately 10:40 p.m., Homeland Security Agent Brett Tablan ("Agent Tablan"), who was inside the lobby, noticed a blue Infiniti and a silver truck pull to the front of the Hotel Santa Fe. A male exited the blue Infiniti, proceeded to look into the hotel lobby from the outside, and then left. From there, he reentered his vehicle and departed the hotel. Agent Tablan confirmed that the driver was Duenas from the photos sent to him from Officer Igros identifying "T.J."

At approximately 10:45 p.m., surveillance teams witnessed the two vehicles return to the hotel and park in front of the lobby. Investigators conducted a "takedown" of the drivers of both

3

vehicles, meaning that they were removed from their vehicles and immediately "placed under arrest."[1] During the arrest, Duenas was instructed by Guam Customs and Quarantine Officer Adam Grey ("Officer Grey") to get on the vehicle and place his hands behind his back. Duenas was then handcuffed. There is no evidence that a license plate or Department of Motor Vehicles check was done on either vehicle or driver.

Officer Grey testified that he found a glass pipe in Duenas' pocket during a pat-down for weapons, but could not recall finding any other items. The driver of the silver truck was identified as Ryan Christopher Mesa ("Mesa"). Duenas and Mesa were transported to the Drug Enforcement Administration ("DEA") Office for processing at approximately 11:00 p.m.

At the hearing, Duenas' counsel noted it was unclear whether a desktop postal scale and a Western Union receipt dated July 2, 2016, from Duenas to an individual named Adam Bogema in the amount of $800.00 was found in Duenas' or Mesa's vehicle. The Government conceded that it had not presented witnesses to testify that the two items came from Duenas' vehicle. As a result, the court finds that the two items were not seized from Duenas' vehicle. Further, no evidence was presented that the two items were seized from Mesa's vehicle.

At approximately 11:30 p.m., Duenas was interviewed by Guam Customs and Quarantine Officer Henry James ("Officer James"). Officer James prepared a written summary of his oral interview with Duenas, and Duenas prepared a written statement on August 16, 2016, at 12:34 a.m.

## II. LEGAL STANDARD

A defendant may move to suppress evidence before trial pursuant to Federal Rule of Criminal Procedure 12(b)(3)(C).

---

[1] Duenas was not provided his Miranda warnings at the Hotel Santa Fe and did not receive them until he arrived at the DEA Guam Resident Office.

In an evidentiary hearing on a motion to suppress, the Defendant has the burden of persuasion, in establishing that his own Fourth Amendment rights were violated by the challenged search or seizure. *United States v. Caymen*, 404 F.3d 1196, 1199 (9th Cir. 2005). The prosecution, as the proponent of the evidence, must bear the burden of proving its admissibility. *See United States v. Coades*, 468 F.2d 1061, 1064 (3d Cir. 1972); *United States v. Colbert*, No. 89-310, 1990 WL 5200 at *1 (D. N.J. January 23, 1990) (citing *Katz v. United States*, 389 U.S. 347 (1967)).

On a motion to suppress, the controlling burden of proof imposes no greater burden than proof by a preponderance of the evidence. *See United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

### III. DISCUSSION

Duenas moves to suppress: (1) all physical evidence seized from him as illegal "fruits" of the unlawful arrest; and (2) all post-arrest statements he made to law enforcement officers. *See* Mot. Suppress at 4, ECF No. 26. Duenas asserts that probable cause was lacking to arrest him because "[t]he only information supplied to agents prior to the takedown" was that "[Scully] claimed that [Duenas] was supposed to receive the ice." *Id.* No information was given by Duenas or any other individual supporting Scully's claim, and the correspondence between Scully and Duenas merely referred to a meeting. *Id.* Additionally, the text correspondence includes no reference to drug transactions. *See id.* at 4-5. Duenas contends that probable cause is lacking, thus mandating suppression of the glass pipe seized from the search of his person, any evidence seized from his vehicle, and his post-arrest statements. *See id.* at 4-5.

The Government counters that information obtained from Scully that she was delivering the methamphetamine to "T.J." was sufficient to create probable cause to arrest Duenas when he arrived at the Hotel Santa Fe. Opp'n Mot. Suppress at 3-4, ECF No. 53. In the Government's

5

view, the following facts supplied the requisite probable cause: (1) Scully told the officers that she had previously delivered approximately 200 grams of methamphetamine to Duenas; (2) the text messages sent by Duenas to Scully; (3) Officer Igros' viewing of Duenas' Facebook profile; (4) Duenas's text that he was driving a blue Nissan Maxima; (5) Agent Tablan's observation of an individual exiting a blue Infiniti to enter the Santa Fe Hotel lobby; and (6) Duenas' text message to Scully informing her that he had arrived at the hotel. *Id.* at 3-4. The Government invokes the collective knowledge doctrine to argue that the investigators involved "had knowledge and reasonably trustworthy information based on their interview with [Scully]."[2] *Id.* at 3-4.

**A. The Officers Lacked Probable Cause to Arrest Duenas.**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches." U.S. Const. amend. IV. "A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence" passes constitutional muster "if the arrest is supported by probable cause." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (citing *United States v. Watson*, 423 U.S. 411, 424 (1976)) (citation omitted); *see also United States v. Brooks*, 610 F.3d 1186, 1193 (9th Cir. 2010) (A warrantless arrest is proper if it was supported by probable cause.). Probable cause exists where "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (citations omitted); *see also Brooks*, 610 F.3d at 1193

---

[2] The Ninth Circuit Court of Appeals has applied the collective knowledge in two situations: (1) "where law enforcement agents are working together in an investigation but have not explicitly communicated the facts each has independently learned," and (2) "where an officer (or team of officers), with direct personal knowledge of *all* the facts necessary to give rise to reasonable suspicion or probable cause, directs or requests that another officer, not previously involved in the investigation, conduct a stop, search, or arrest." *United States v. Ramirez*, 473 F.3d 1026, 1032-33 (9th Cir. 2007).

(quoting *United States v. Lopez,* 482 F.3d 1067, 1072 (9th Cir. 2007)).

The only information the officers possessed regarding Duenas' purported future criminal activity was Scully's statement at the Airport. Thus, this court must evaluate Scully's reliability as an informant to assess whether probable cause was present.

Courts consider a number of factors when assessing the reliability of an informant's tip. *United States v. Rowland*, 464 F.3d 899, 907–08 (9th Cir. 2006). "First, a known informant's tip is thought to be more reliable than an anonymous informant's tip." *Id.* (citing *See Florida v. J.L.,* 529 U.S. 266, 271 (2000); *Adams v. Williams*, 407 U.S. 143, 146–47 (1972)). A known informant is considered more reliable "because an anonymous informant typically cannot be questioned about the basis for knowing the information or motive for providing the tip, nor can the anonymous informant be held accountable for providing false information in violation of the law." *Id.* at 907-08 (citations omitted). Second, an informant who has "a proven track record of reliability is considered more reliable than an unproven informant." *Id*. *at* 908. Third, an "informant's tip is considered more reliable if the informant reveals the basis of knowledge of the tip—how the informant came to know the information." *Id.* (citation omitted). Fourth, "a tip that provides detailed predictive information about future events that is corroborated by police observation may be considered reliable, even if the tip comes from an anonymous source." *Id.* (citations omitted). Predictive information revealing "detailed knowledge of an individual's intimate affairs is more reliable than predictive information that could be observed by the general public . . . and such self-verifying detail is considerably more valuable if it relates to suspicious activities than if it relates to innocent activities. *Id.* (citations omitted). Finally, the Ninth Circuit considers the informant's "apparent motive to fabricate the tip," and whether the informant "presumably have been held accountable if his information proved to be false." *Id.* (citing *United States v. Terry–Crespo*, 356 F.3d 1170, 1176 (9th Cir. 2004) (observing that exposure to

legal sanction for providing false information increases reliability of tip)).

Here, the first factor weighs in favor of the Government solely because Scully's identity was known. *See id.* at 907–08. The second factor, however, weighs in favor of Duenas because there is no evidence that Scully provided reliable information in the past. *See id.* at 908. Additionally, the officers failed to verify information she provided regarding her purported previous travel to Guam. Thus, Scully was an "unproven informant" without any "track record of reliability." *See id.*

The third factor weighs slightly in favor of the Government to the extent that she was the only basis of knowledge of the tip. *See id.* However, it is problematic because there is no evidence that the officers attempted to corroborate any information regarding the purported May 2016 drug transaction, such as checking flight or passport records prior to the arrest.

The fourth *Rowland* consideration weighs in favor of Duenas because Scully's information regarding Duenas' movements were not predictive. Rather, Duenas was contemporaneously told by the officers and Scully to meet at the Hotel Santa Fe. Meeting an individual at a hotel as directed by text message, without more, could be considered an "innocent" rather than "suspicious" activity." *See id.*

As to the final factor, however, Scully may have had motive to fabricate the tip. *See id.* Scully was intercepted at the Airport, and her tip may have been an attempt to lessen her culpability. The court would normally consider this factor to be neutral because despite Scully's motive to fabricate, she could be held accountable for false information. The court notes, however, that Officer Gutierrez observed Scully's eyes to be glassy. This could be indicative of her being under the influence of narcotics. Consequently, this factor weighs against Scully's reliability and in favor of Duenas.

When these factors are considered, Scully was not sufficiently reliable for the officers to

conduct a warrantless arrest of Duenas in the absence of a controlled delivery. Even though Scully told the officers she had delivered methamphetamine to Duenas in the past, none of the texts explicitly referenced drugs. *See* Gov.'s Ex. 1. There is reference in the text messages to a "guy" who "has 7." Even if this is coded language for illegal activity, it is unclear and does not arise to the level of probable cause necessary to conduct a full-blown arrest. *See United States v. Mayorquin*, No. CR 12-1076-CAS, 2013 WL 5405704, at *3–4 (C.D. Cal. Sept. 20, 2013) (concluding that phone calls referencing "seven shirts" and "six little dolls" with respect to a narcotics trafficking coupled with the officer's observation of black bag being placed in defendant's vehicle established reasonable suspicion, but stopping short of determining probable cause was present). Unlike cases where the Ninth Circuit has determined "coded" conversations could contribute to a finding of probable cause, the Government in this case did not present an affidavit by any officer providing interpretations of purportedly "coded" conversations. *See United States v. Beltran*, 11 F. App'x 786, 787 (9th Cir. 2001), *as amended on denial of reh'g* (May 30, 2001). Moreover, unlike *Beltran*, this case did not involve any ongoing investigation. *See id.*; *see also United States v. Freeman*, 498 F.3d 893, 902 (9th Cir. 2007) (observing that an officer "may provide [lay] opinion testimony regarding meaning of vague or ambiguous statements" if the lay opinion is "rationally based on the perception of the witness." (citations omitted)).

Additionally, even though the officers testified that they were able to identify Duenas from his Facebook profile and description of his vehicle, the Government has failed to articulate how arranging to pick up or meet Scully at the hotel is indicative of criminal activity. The Government has not shown what contraband or evidence of a crime they believed was present on Duenas' person or in Duenas' vehicle. There were no incriminating statements by Duenas in the text messages he sent to Scully, no evidence presented of an ongoing criminal investigation of

9

Duenas, and no evidence that a Department of Motor Vehicle return was executed showing that Duenas had a criminal record.

Most importantly, the officers and Scully did not follow through with a controlled delivery to Duenas. The drugs were in Scully's possession rather than Duenas' and there was no observation of an attempted transfer of illicit substances between Scully and Duenas.

Although the officers testified a controlled delivery was not possible because the Hotel Santa Fe had no available rooms, the Fourth Amendment does not yield to the convenience of law enforcement officials. Probable cause[3] is required for a warrantless arrest and in this case, it was lacking. *See Brooks*, 610 F.3d at 1193. The facts and circumstances available to the officers were not "sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that [Duenas] has committed, is committing, or is about to commit an offense." *See DeFillippo*, 443 U.S. at 37. Because there was no probable cause for a warrantless arrest, the item seized from Duenas' person, specifically the glass pipe, is hereby suppressed.

**B. The Automobile Exception is Inapplicable.**

Duenas argues that "all evidence seized, including items seized from [Duenas'] . . . car, as well as any statements made thereafter, must be suppressed" because his arrest was made without probable cause and without a warrant. Mot. Suppress at 5, ECF No. 26. In response, the Government asserts that the officers' search of Duenas' car was permissible because it was based on probable cause and the automobile exception. Opp'n Mot. Suppress at 4-5, ECF No. 53.

"Under the automobile exception to the warrant requirement, police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains evidence of a crime." *Brooks*, 610 F.3d at 1193 (footnote added) (citing *United States v. Albers*,

---

[3] At the hearing, the Government argued that the detention and search of Duenas was a permissible Terry stop because reasonable suspicion was present. Officer Grey testified, however, that an arrest rather than a Terry stop of Duenas occurred. Therefore, the Government's Terry stop argument is unavailing.

136 F.3d 670, 673-74 (9th Cir. 1998)). "Probable cause to search is evaluated in light of the totality of the circumstances." *Id.* at 1193-94 (citing *United States v. Pinela-Hernandez*, 262 F.3d 974, 978 (9th Cir. 2001)).

Under the totality of the circumstances, the officers, at the time they stopped the Infiniti, had no probable cause to believe the vehicle contained evidence of drugs or money to be used in a narcotics transaction. In addition, the Infiniti did not match the vehicle model description referenced in the text message exchange between Scully and Duenas. Further, the officers did not observe a controlled delivery between Duenas and Scully. Accordingly, the automobile exception is inapplicable because there was no probable cause to believe that the vehicle contained evidence of a crime and no evidence was presented that anything was seized from the Infiniti.

**C. Duenas' Post-Arrest Statements Are Fruits of the Unlawful Arrest.**

"[V]erbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest as the officers' action in the present case is no less the 'fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion." *Wong Sun v. United States*, 371 U.S. 471, 485–86 (1963) (footnote and citation omitted). The Supreme Court of the United States later expanded the scope of *Wong Sun*, and held that confessions "obtained by exploitation of the illegality of his arrest" should be suppressed. *Dunaway v. N.Y.*, 442 U.S. 200, 217 (1979) (citations and internal quotation marks omitted). The relevant inquiry focuses on 'the causal connection between the illegality and the confession." *Id.* (citations and internal quotation marks omitted). If "there is a close causal connection between the illegal seizure and the confession, not only is exclusion of the evidence more likely to deter similar police misconduct in the future, but also use of the evidence is more likely to compromise the integrity of the courts." *Id.* at 217-18. Relevant factors to consider include the temporal proximity of the

arrest and the confession and the presence of intervening circumstances. *Id.* at 218 (reversing conviction where trial court admitted statements made within two hours of arrest made without probable cause despite providing *Miranda* warnings).

The court has concluded that the Duenas' arrest was unlawful because it was unsupported by probable cause. Moreover, like *Dunaway*, the statements were made within two hours of the illegal arrest and there were no intervening circumstances that purged the illegality of that arrest. Even though Duenas was given *Miranda* warnings, such warnings are merely the threshold for a Fourth Amendment analysis and are not a *per se* cure to admit statements following an unlawful arrest. *See id.* at 217 (observing that "if the Fifth Amendment has been violated, the Fourth Amendment issue would not be reached"). Therefore, any verbal and written statements made by Duenas, are hereby suppressed.

## IV.  CONCLUSION.

Duenas' Motion to Suppress is hereby **GRANTED,** because probable cause was lacking in this case. The facts and circumstances available to the officers were not sufficient to warrant a prudent person of reasonable caution to believe that Duenas had committed, was committing, or was about to commit an offense. Consequently, all evidence seized from Duenas' person, in particular the glass pipe and his written and verbal post-arrest statements, are hereby suppressed.

**SO ORDERED.**



**/s/ Frances M. Tydingco-Gatewood**
         **Chief Judge**
      **Dated: Jun 12, 2017**